### RICHARD GRAHAM v. JESSE M. SMITH.

Any line of conduct on the part of a parent, from which there may be justly inferred an assent to, or connivance at, the illicit intercourse, will deprive him of all right to maintain an action for the seduction of his daughter.

Such conduct, even if not amounting to an absolute assent, but showing want of due care on his part, may be taken into account in measuring the damages.

It is no excuse for the parent that such conduct was in conformity with the customs of the community in which he lived.

THIS action was brought by the plaintiff for the seduction of his daughter, a girl of about nineteen years of age.

The defense set up was the consent of the plaintiff.

The defendant was a young man living in the neighborhood, and became in the habit of visiting the daughter, and when he did visit her, he stayed until a late hour at night, and sometimes all night, generally blowing out the light, and sitting in the dark, sometimes in the same room in which plaintiff and his wife slept, and sometimes in an adjoining room, the only access to which was through the room in which plaintiff slept.

Both rooms had beds in them, and they sometimes laid down on them together, but generally sat in each other's laps, and taking great liberties with each other's persons.

All this was well known to the plaintiff, and he once advised his daughter that "when Jess. Smith came to *stay with her* she had better have it in his room; that was the way his sister did."

In answer to this defense, several witnesses — among them three married women, who were mothers, and the wives of respectable farmers in the neighborhood — testified that that manner of courtship was the universal custom of the country; and one of the married women, who was fifty-six years old, said that such had been the custom since she was young; and she added, "they sit in a room, alone, and blow out the candle, and having a bed in the room is no killing matter." All the witnesses agreed in saying that a girl's thus "staying with" the young men did not affect her character any.

*The Judge* charged the jury that it had long ago been well settled as the law in this State, that if the parent in any way consented to, or connived at his daughter's having criminal conversation with a man, he could have no redress against the man, however certain might be his loss of her service, or however serious to her the loss of reputation and position in society.

The rule was a wise one, for it was calculated, by its appeals to self interest, to warn parents to be more earnest in teaching their daughters modesty and purity, and to be more watchful over their chastity than the customs of the society in which they moved might seem to demand. And since its first promulgation among us, some fifty years ago, it had undoubtedly had its effect.

Some of the early settlers of this country, from the continent of Europe, had brought with them the immodest and dangerous custom which had been proved in this case, and about the time of the Revolution it was generally prevalent in the Dutch settlements on both sides of the Hudson river,

insomuch that the idea that there was any thing wrong in it, did not prevail to a great extent, and even mothers thought it was "no killing matter" to subject their young unmarried daughters to temptation, and behold them, without concern, surrounded by all the appliances to a fall from virtue.

Fortunately, however, the rule of law referred to, rigidly enforced as it has been, and the advancing refinement and education of the people have caused the almost entire extinction of the custom. From the facts of this trial, it would, however, seem that the remains of it still linger in the land — back in the woods, and among the mountains, not habitually accessible to the moving, advancing world outside.

But however great or limited its prevalence, it affords no excuse for a parent's remissness, or for his heedlessness as to his daughter's chastity — forms no exception to the rule that his consent to, or connivance at, her fall, deprives him of all remedy for the consequences. The public may demand protection against the cost of supporting the quite natural product of such a custom, and the daughter, herself, may, under certain circumstances, have relief from her companion in profligacy; but to the parent, whose folly has caused his child's ruin, the law gives no aid, thus, by its refusal, punishing him, and at the same time warning others against following his example.

The jury were therefore instructed that if they believed that the father had consented to, connived at, or permitted the illicit connection proved in the case, they should find a verdict for the defendant; and even if they could not, from the conduct of the father, justly infer his assent, still they ought to take that conduct into consideration in their award of damages, for in this action a parent has a right to recover a compensation for his wounded feeling, and the stain upon the character of his family, as well as for actual outlay and loss of service.

The verdict was for the defendant.